Thomas J. CARDENAS, Petitioner,

v.

Lenard MEACHAM, Respondent.

No. 4351.

Supreme Court of Wyoming.

Feb. 4, 1976.

Order Feb. 9, 1976.

Gerald M. Gallivan and L. Galen West, graduate law student, Defender Aid Program, Laramie and Dennis L. Sanderson, Afton, for petitioner.

V. Frank Mendicino, Atty. Gen., Jerome F. Statkus and Timothy J. Judson, Asst. Attys. Gen., Cheyenne, David Lewis, Deputy County Atty., Casper, and Don W. Riske, senior law student, Laramie, for respondent.

Before GUTHRIE, C. J., and Mc-CLINTOCK and ROSE, JJ.

ROSE, Justice.

Thomas J. Cardenas has filed a petition for a writ of habeas corpus seeking to set aside his pleas of guilty for rape and felonious assault on the grounds that the pleas were accepted in contravention of Rule 15, Wyoming Rules of Criminal Procedure, and result in a denial of due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

The petitioner pled guilty to the charges of first degree rape and felonious assault, with robbery charges being dismissed. The pleas and dismissals both occurred pursuant to negotiations with the prosecutor's office with knowledge of the presiding judge. At the time the pleas of guilty were made, the court apprised the petitioner of the penalty for first degree rape, but did not make known to him the penalty for felonious assault.

## FAILURE TO INFORM THE DEFENDANT OF THE MAXIMUM SENTENCE FOR FELONIOUS ASSAULT

The first question for decision is whether or not it was error for the trial court to have failed to personally address the defendant-petitioner and inform him of the maximum penalty for felonious assault—a crime to which he has pled guilty and for which he has been sentenced to the Wyoming State Penitentiary for a term of not less than eight nor more than fourteen years. Both the rape and felonious assault sentences are ordered served consecutively.

Rule 15 of the Wyoming Rules of Criminal Procedure provides:

"A defendant may plead not guilty, not guilty by reason of insanity at the time of the commission of the alleged offense, not triable by reason of present insanity, guilty, or, with the consent of the court, *nolo contendere*. The court may refuse to accept the plea of guilty and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept the plea of guilty, or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." [Underlining supplied]

The petitioner says that he did not and could not have voluntarily pled guilty within the meaning of the rule unless the judge, on the record, personally addressed him to inform him of the maximum penalty for felonious assault.

We sustain the petitioner's contention and hold that in order to establish the voluntariness of the plea as required by the rule, there must be a record showing that the judge, in personally addressing the defendant, informed him of the maximum

penalty for any and all crimes for which sentence is to be imposed in order that the court may determine the defendant had an

> "understanding of the nature of the charge and the consequences of the [his] plea."

We held in *Britain v. State,* Wyo., 497 P.2d 543 (1972), that for the judge to fail to address the defendant and thereby determine if his plea is made voluntarily is error. In Britain we sent the case back to permit the defendant to plead anew. In so holding we relied upon the opinion of *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 1169–1170, 22 L.Ed.2d 418, in which the Court stated that the purpose of the corollary provision in the Federal Rules (Rule 11 of the Federal Rules of Criminal Procedure) was to make sure whether

> ". . . a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea." (*Britain,* supra)

Can it be said that a petitioner such as Cardenas, who enters a plea without being informed of the maximum sentence, is, nonetheless,

> "aware of the consequences of his plea"? (*Britain,* supra)

*Tucker v. United States,* 409 F.2d 1291 (5 Cir. 1969) held that a plea of guilty is invalid as not being understandingly entered if a defendant does not know the maximum penalty possible for the offense. To the same effect, see *United States v. Perwo,* 433 F.2d 1301 (5 Cir. 1970), where the court held that the defendant must know the precise limits of the penalties which could be imposed—also see *United States ex rel. Hill v. United States,* 452 F. 2d 664 (5 Cir. 1971); and *Fortia v. United States,* 456 F.2d 194 (5 Cir. 1972). In these Fifth Circuit cases the courts hold that the defendant must know the limits of the penalty *at the time of the entry of his plea.*

We hold that the record must affirmatively show that the judge, at the time the plea is received, has informed the defendant of the maximum limits of the penalty as a prerequisite to the discharge of the court's obligation imposed by Rule 15, W. R.Cr.P., which provides that the judge

> "*shall not* accept such plea [of guilty] . . . without first addressing the defendant personally and determining that the plea is made voluntarily *with understanding of the nature of the charge and the consequences of the plea.*" [Emphasis supplied]

When the prisoner stands at the Bar before the judge at the moment of truth and offers to enter his plea of guilty, the decision must *then* be made by the court (*not some other time*) that the accused understands

> "the consequences of his plea." (Rule 15, W.R.Cr.P.)

■ It is a part of the informing process which goes to the guarantee of the defendant's constitutional rights of due process under the Fifth and Fourteenth Amendments of the United States Constitution that he—*at that time*—be told by the judge in a way which permits of understanding that he, the defendant, may be sent to the prison for a definite maximum number of years.

In *United States v. Blair,* 470 F.2d 331 (5 Cir. 1972), the court, relying upon *McCarthy v. United States,* supra, held that the informed nature of the plea must appear affirmatively from the record. The court ruled:

> "Under Rule 11 the Trial Court is required to address the Defendant personally regarding the consequences of the plea . . . *And the informed nature of the plea must appear affirmatively from the record* . . ." [Emphasis supplied]

In *McCarthy,* supra, there was confusion as to whether the defendant understood that the crime to which he had pled guilty

contained the elements of knowledge and willfulness—he contending that his acts had merely been negligent and inadvertent.

The Court said:

" . . . [H]ad the District Court scrupulously complied with Rule 11, there would be no need for such speculation . . . [P]etitioner's own replies to the court's inquiries might well have attested to his understanding of the essential elements of the crime charged, . . ." (*McCarthy* supra, 394 U.S. page 471, 89 S.Ct. page 1173)

The *McCarthy* Court quoted from *Heiden v. United States,* 353 F.2d 53, 55 (9 Cir. 1965), where it was stated that Rule 11

" 'contemplates that disputes as to the understanding of the defendant and the voluntariness of his action are to be eliminated at the outset . . .' "

And then the Court said in *McCarthy:*

" . . . There is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him." [Italics in original text]

■ We hold that the petition must be granted for failure of the district judge to personally apprise the defendant on the record at the time the plea was entered of the maximum penalty the defendant might have to pay. In remanding the matter to the trial court for purposes of allowing the petitioner to plead anew, we adopt the following conceptual language of the United States Supreme Court from *McCarthy,* supra:

" . . . Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more

difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking." (*McCarthy,* supra, 394 U.S. page 472, 89 S.Ct. page 1174)

## PLEA BARGAINING—AND RULE 15

The petitioner urges the further following ground in support of his petition:

"The petitioner's pleas of guilty were based on the belief that as a result of the plea negotiations, his sentences would be imposed concurrently. Inasmuch as there was in fact no agreement as to concurrency, and inasmuch as petitioner was unaware that no such agreement existed, petitioner's pleas were involuntary and should be set aside and petitioner permitted to plead anew." (From petitioner's brief in this court)

It is made clear by the petitioner in his brief that:

" . . . The error which is alleged to have been committed by the Court is not a failure to adhere to a plea bargain, but rather a failure to properly examine the petitioner on the record regarding the petitioner's understanding of the plea bargain."

From all of the evidence in the record it is reasonable to assume that there was extensive discussion about concurrent and consecutive sentencing with the court indicating to the attorneys that he had never given consecutive sentences, or very "seldom" imposed consecutive sentences, in this kind of a case. It is clear that the judge made no promises with respect to sentencing and did not believe that sentencing was a part of the bargain, even though he knew that the pleas were being made as a result of plea bargaining. So far as the record is concerned, it stands uncontradicted upon the affidavits of the defendants that they were told by their at-

torneys that concurrent sentencing was a part of the consideration of the plea bargain.

On January 15, 1973, when petitioner was sentenced to not less than eight nor more than fourteen years for felonious assault and not less than thirty-five nor more than forty years for rape, the sentences to run consecutively, he immediately reacted, announcing to the court:

". . . [W]e were lead [sic] to understand you would run our sentences concurrent, not consecutively."

When Joe Cardenas was sentenced, on the same occasion, his attorney, R. B. Whitaker, arose to say:

"I was under the impression that these sentences would, if at all possible, would run concurrently."

In his first petition for a writ of habeas corpus, Thomas Cardenas, petitioner here, asserted that he was induced to plead guilty in return for, among other things, concurrent sentencing. He makes the same claim now. The petitioner filed an affidavit in which he swears that he was told by his attorney that his attorney and another attorney, having talked to the judge, had a bargain whereby the following terms had been reached among all concerned:

1. Robbery charges would be dismissed against all defendants.
2. No habitual criminal charges would be filed.
3. The judge had promised to run the sentences concurrently and not consecutively.

The affidavits of the other three defendants were the same as the affidavit of petitioner-Cardenas.

The court requested the attorney general to inquire of the attorneys involved to ascertain what their memories revealed concerning representations made by the court, the attorneys, and any others concerned.

The following excerpts are from the letters of the attorneys who represented the various defendants.

Mr. Vlastos, for Mathis, said that at a meeting with the court on December 11, 1972:

". . . Some reference was made relative to whether the sentences would be concurrent or consecutive and the Court indicated that he would not commit himself but would consider the type of sentences and whether the same should be consecutive or concurrent prior to sentencing."

R. B. Whitaker, for Joe Cardenas, in his letter said:

"In regard to the second count, or the assault count, it is my best recollection that the Judge was asked if the sentences would run concurrently or consecutively, and I understood him to say that he had never given consecutive sentences . . ."

James Sinon, for defendant Keller, said:

"I have the distinct impression that one of the other counsel, in the hall outside the courtroom, made some mention to me that if the defendants entered pleas of guilty to two of the charges, the other two would be dismissed and that the two sentences imposed would run concurrently . . .

"The only thing I ever heard Judge Armstrong say about sentencing was a statement to the effect that he had never before imposed consecutive sentences in such a case. He *may* have made some remark about 'seeing no reason to do so now,' but I can't state that definitely . . ."

In his letter of April 24, 1973, to Gerald M. Gallivan, Director of the Wyoming Defender Aid Program, Mr. Scott, attorney for the petitioner, wrote:

"In effect, the County Attorney's office for Natrona County, Wyoming agreed to accept guilty pleas to rape and one other of the felonies with the understanding that they would ask the Court to dismiss the remaining felonies. In conference with the Court, the Judge

mentioned that he very seldom gave consecutive sentences; that he did not make any commitment that sentences for Mr. Cardenas would be concurrent."

Counsel further stated in the same communication:

"Mr. Cardenas has written to me several times contending that the Judge breached his agreement not to impose consecutive sentences. The Judge did not make such an agreement nor did the County Attorney's office."

In his letter to the petitioner, dated March 8, 1973, Mr. Scott wrote:

"Answering your letter of February 28, prior to the trial of the case, Judge Armstrong did inform all counsel that he very seldom imposed sentences on a contract basis. However, he did not make any promise that he would not do so if he felt that concurrent sentences were warranted. I don't feel that he breached any agreement with us as attorneys for the defendants nor any agreement with the defendants. There was a risk involved which was assumed. . . ."

There is no record denial by Mr. Scott of the sworn assertion made by Thomas Cardenas, the petitioner here, to the effect that his attorney represented to him that concurrent sentencing was a part of the bargain.

*We do not pass upon the question of whether the attorney in fact made such a representation to his client, the petitioner; we simply observe that the petitioner's sworn statement to this effect stands in the record without contradiction and is corroborated by the other defendants through their sworn affidavits to the same effect.*

■ A plea is, of course, void when induced by promises which deprive it of its voluntariness. *Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed. 2d 473 (1962).

In denying Thomas Cardenas' first petition for a writ of habeas corpus, the court

found, speaking to the question of concurrent or consecutive sentencing:

That it had made no such promise (that the sentences would run concurrently) to petitioner or his attorney; that the attorney's letter to Mr. Ahlstrom disclosed that they had made no such promise to any of the defendants; that the letter from petitioner's attorney stated that the court had made no such commitment; that the court had asked the prosecuting attorney at the sentencing if there had been any bargaining with respect to sentence and that his reply had been in the negative; and that the court had stated to petitioner at the sentencing proceeding, "Where the idea of concurrent sentences came from I have no idea because it didn't come from me and I am the one that has to impose the sentences."

The judge did not inquire of the petitioner on the record when the pleas of guilty were made (or at any other time so far as the record indicates) concerning the petitioner's understanding of the plea bargain in order to ascertain whether or not he understood the consequences of his acts. The terms of the bargain were not elicited by the court from counsel for defendant— the state—or the defendant himself in open court in a way which would permit us to determine from the record that petitioner knew, and the court knew the petitioner had knowledge, that there was a possibility the court would order the sentences to run consecutively rather than concurrently.

With these facts and assumed propositions, which find adequate support in the record, we must decide whether it was prejudicial error to accept the petitioner's pleas of guilty to rape and felonious assault

(a) where the pleas may have been given by the defendant in reliance upon representation of attorneys that the sentences would run concurrently, or

(b) where the petitioner's belief was founded upon a faulty impression as

to whether the bargain provided for concurrent rather than consecutive sentences.

As an aid to answering these inquiries, we ask—

1. Can a plea be voluntarily made by the defendant

"with understanding of the nature of the charge and the consequences of the plea." (Rule 15, W.R.Cr.P.),

when he enters his plea under the conditions described above?

2. Is Rule 15, as to voluntariness, violated when the court, in addressing the defendant, fails to inquire on the record with respect to the defendant's understanding of the plea bargain?

## TO SATISFY RULE 15—THE BARGAIN MUST BE EXPLAINED TO THE DEFENDANT ON THE RECORD

It is not to be overlooked that this court has held that the purpose of Rule 15, W. R.Cr.P. is

"to fix a guideline for the court to follow in determining whether a plea is voluntary." (*Britain,* supra)

In the last case cited the court did not address the defendant personally to determine the voluntariness of the plea and whether the defendant had an understanding of the nature of the charges' lodged against him and the consequences of his plea. We held that a finding of voluntariness (absent compliance with the rule) was error and remanded the matter to the lower court with instructions to permit the defendant to plead anew.

We have held, on the first issue raised by this petitioner, that it is prejudicial error for the court to have failed to inform the defendant of the penalty for felonious assault since such lack of information upon the part of the defendant renders it impossible for the court to know whether or not the plea was entered voluntarily and whether or not the defendant understood the consequences of his act.

Referring to plea negotiation agreements, the Court in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), held:

". . . Fed.Rule Crim.Proc. 11, governing pleas in federal courts, now makes clear that the sentencing judge must develop, *on the record,* the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge. The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known . . ." [Italics in original text]

Of *Santobello,* the petitioner says in his brief:

". . . The rationale for this decision was that it would be unfair to accept a guilty plea where part of the bargain, upon which the plea was based, was breached. The defendant had not agreed to plead guilty to charges under terms other than those set forth in the agreement. Santobello was thus permitted to plead anew. This reasoning also should apply where a defendant reasonably believes that certain terms of an agreement exist when in fact they do not. His plea cannot be voluntarily entered within the meaning of Rule 11 or Rule 15 until he is aware of the exact terms of the agreement and agrees to plead guilty under those terms."

We agree with the logic of petitioner's above quoted analysis.

It was said in *United States v. Frontero,* 452 F.2d 406, 411 (5 Cir. 1971):

"To be valid, a guilty plea must be knowing, intelligent, and voluntary."

\* \* \* \* \* \*

". . . Inherent in the 'plea bargaining' process is the possibility of a misunderstanding on the part of the participants as to possible consequences of a guilty plea. The defendant is often told by his attorney that a 'promise' of a certain sentence has been made in exchange

for his plea of guilty when, in fact, the 'promise' has come from one, such as the prosecutor, who is in no position to make promises concerning sentencing or has been made by the trial judge in terms of 'probably', 'maybe', or 'I am inclined toward'. These 'promises' are occasionally communicated to defendants as firm deals. *When the defendant is induced to plead guilty on the basis of his misinterpretation of the 'promise', the plea may, in certain cases, be invalid because it was based on incomprehension or misinterpretation.* [Emphasis supplied]

One of the main reasons for Rule 15 is to avoid the kind of confusion and misunderstanding that we find confronting us here. The problem could not have come about if, at the time the plea was entered, there had been a thorough inquiry on the record concerning all aspects of the bargain.

The court must fully adhere to Rule 15 (*Britain v. State*, supra) and *must* inquire

"whether a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea . . ."

In *Britain,* supra, in considering the purpose of the rule, we cite *Raines v. United States,* 4 Cir., 423 F.2d 526, 530 (1970), and paraphrase the rule of that case as follows:

"In *Raines v. United States,* 4 Cir., 423 F.2d 526, 530, (1970), it was said the purpose and spirit of Federal Rule 11 is diametrically opposed to the unfortunate tradition of plea bargaining, which often

occurs without the knowledge of the court. Logically, the court said, the general inquiry should elicit information about plea bargaining, but it seldom has in the past."

In *United States v. Williams,* 4 Cir., 407 F.2d 940, 948–949, it was said:

"We think that plea bargaining serves a useful purpose both for society and the prisoner and is a permanent part of the criminal courtroom scene, but we think that it ought to be brought out into the open. We do not suggest that defense counsel and the prosecutor actually conduct their negotiations in open court, *but we do urge that in this circuit a full and complete disclosure of such negotiations be announced to the court and made a part of the record.* The matter is, after all, public business, and we deplore the hypocrisy of silent pretense that it has not occurred . . ."[1] [Emphasis supplied]

We agree with the doctrine of *Raines,* supra, *Williams,* supra, and the suggested American Bar Association Standards with respect to plea bargaining. In order to comply with Rule 15 of the Wyoming Rules of Criminal Procedure, the court, before the plea is entered, must determine if there has been a bargain made with respect to the plea. If there has, it must be made a part of the record. The court must then inquire of the defendant if the purported bargain is as he understood it to be when making his plea decision. The court must explain the bargain's effect with respect to maximum sentence and its

1. The suggested American Bar Association Standards include the following:
"1.5 Determining voluntariness of plea.
"The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court. The court should then address the defendant personally and determine whether any other promises or any force or threats were used to obtain the plea." (A.B.A. Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty, Approved Draft, 1968, page 29)

effect on concurrent or consecutive sentencing, if that be a part of the bargain, and all other aspects of the agreement must be reviewed by the court with the defendant. The court must make known to the defendant whether there is anything about the bargain which is abhorrent to the court or which violates any aspect of the sentence which the court intends to impose. If the bargain purports to improperly bind the court, the defendant should know this and should be told that the court will not be bound by any such impropriety.

In other words, every aspect of the bargain and the court's reaction to it should be reviewed at the Bar on the record before the plea is received so that the record will forever reflect that it was made voluntarily by the defendant and with a full understanding of its consequences.

In this case there was no impropriety exercised by any person whomsoever. However, since inquiry into the bargain was not made, as outlined above, confusion has resulted. There is no way to determine from this record that petitioner understood the consequences of his act and therefore voluntarily made his pleas of guilty.

## CONCLUSION

On the first point at issue in this matter we have decided that Rule 15 was not complied with because the maximum penalty for felonious assault was not made known to the defendant by the court at the time he entered his pleas of guilty. The court did apprise defendant of the maximum sentence for rape.

If this were the only question in the case, we would return the case to the lower court to permit the defendant to replead as to felonious assault only.

However, in holding that the rule was not complied with when the plea bargain was not revealed for the record at the hearing in which the defendant entered his pleas, we are concerned with the *whole* bargain. The entire bargain included both the plea of guilty for rape and the plea of guilty for felonious assault, as well as the dismissal of the robbery counts and an understanding that habitual criminal charges would not be filed. Since the voluntariness of both pleas has not been established on the record, we must consider and dispose of the rape plea as well as the plea of guilty for felonious assault, together with the other elements of the bargain.

We are persuaded that the disposal of the problem under the authority of *McCarthy v. United States,* supra, is sound. In the last mentioned case the Court followed the rule of *Heiden v. United States,* 9 Cir., 353 F.2d 53 (1965), where that court held that when the rule is not fully complied with, the defendant's guilty plea must be set aside and his case remanded for another pleading, at which he may plead anew.

The rationale for this rule is found in *McCarthy,* supra, where the United States Supreme Court said, in referring to the required procedure under Rule 11 of the Federal Rules of Criminal Procedure:

> " . . . There is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him." [Italics in original text] (Also supra this opinion)

We adopt the rule of *McCarthy* and *Heiden* and order that the pleas of guilty may be withdrawn to both the rape and the felonious assault charges and the petitioner may be permitted to plead anew thereto.

Since the robbery charges were ordered dismissed by authority of and as a part of the bargain, they may be refiled by the state and the petitioner will be permitted to plead to them and to any other charge or charges which the state may file.

The petition is granted and the matter remanded to the trial court for further

proceedings not inconsistent with this opinion.

RAPER and THOMAS, JJ., not participating.

## ORDER

The above entitled matter having come on before this court upon a petition for a writ of habeas corpus, the court having considered the grounds therefor and finding that such writ should be issued;

NOW, THEREFORE, IT IS HEREWITH AND HEREBY ORDERED that the petition for a writ of habeas corpus be granted; and Leonard Meacham, Warden of the Wyoming State Penitentiary, is ordered to deliver said petitioner, Thomas J. Cardenas, to the Sheriff of Carbon County, Wyoming, who will keep said petitioner in custody until ordered by the District Court of that county to deliver him into Court.

IT IS FURTHER ORDERED that the District Judge in and for Carbon County, Wyoming, shall enter an order setting a time when Thomas J. Cardenas will appear and be arraigned upon the charges of felonious "assault and battery upon a human being, namely Rick Anthony, with intent to comit a felony, to-wit: rape, upon the person of Barbara Madsen, a female, . . . in violation of Wyoming Statutes 1957, Section 6–69", and "feloniously have carnal knowledge of a woman, to-wit: Barbara Madsen, forcibly and against her will, in violation of Wyoming Statutes 1957, Section 6.63(a) (1965) [6–63(A), 1975 Cum. Supp.]," said charges having allegedly been committed on June 25, 1972, whereupon the trial or other disposal of the matter will be had in the orderly business of the court.

IT IS FURTHER ORDERED that in and on behalf of the people of the State of Wyoming, the appropriate authorities may, in the jurisdiction made and provided for such matters, file any and all such further and additional charges against Thomas J. Cardenas resulting from the alleged occurrences on the 25th day of June, 1972, as the State believes should be lodged.

IT IS FURTHER ORDERED that all further and additional proceedings herein will be taken in a manner which are not inconsistent with the opinion of this court handed down February 4, 1976, this order and the writ to be issued pursuant hereto.