**Leonard Dean CLOUSE, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff). (Two Cases)**

**Nos. 89–96, 89–97.**

Supreme Court of Wyoming.

April 19, 1991.

Leonard D. Munker, State Public Defender, Steven E. Weerts, Sr. Asst. Public Defender, and David Gosar (argued), Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director, Prosecution Assistance Program, and David J. Huss (argued), Student Intern, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Leonard Dean Clouse challenges the sentences he received for his armed robberies to which he pled guilty in Park County.

We remand Issue I and affirm Issue II.

Clouse raises two issues:

"I. Does the oral pronouncement of sentence control the written judgment and sentence?

"II. Is appellant entitled to specific performance of the 'plea proposal' offered by Park County because he pled guilty in Campbell County in reliance on this arrangement?"

Clouse faced several charges in Campbell and Park Counties for the armed robberies of convenience stores located in those two counties. On June 3, 1988, the attorney appointed to represent Clouse against the charges filed in Campbell County telephoned the Park County prosecutor to get an "indication of what Park County would be willing to do with [Clouse's] assorted felony charges." The Park County prosecutor responded with a proposal—in a letter dated June 6, 1988—that offered "the possibility of concurrent sentencing" on the Campbell and Park County charges. The attorney sent Clouse a copy of the letter he received from the Park County prosecutor along with a letter updating Clouse on the status of his case. The proposal contained in the letter fell through, according to the Park County prosecutor, when the Campbell County Attorney's office decided to keep the Campbell County charges separate from the Park County charges.

After the district court denied various pretrial motions filed by the defense, Clouse's attorneys became concerned that the case was not "defensible." There was also a concern over the possible severity of the sentence Clouse could receive if con-

victed on all the charges filed in Campbell County. The attorneys discussed these concerns with Clouse who agreed to accept the plea agreement offered by the Campbell County Attorney's office. During those plea negotiations, the attorneys for Clouse never mentioned the letter from the Park County prosecutor because it "was not part of any arrangement in Campbell County and wasn't relevant to the plea bargain that was made in [Campbell County]." The terms of the agreement called for Clouse to plead guilty to one count each of armed robbery and first degree sexual assault in exchange for the other counts of armed robbery and first degree sexual assault being dismissed.[1]

When Clouse was subsequently arraigned on the Park County charges, a different public defender was appointed to represent him. Clouse, after initially pleading not guilty, agreed to negotiate towards a possible plea agreement. Park County rejected, however, any proposal that required it to consent to concurrent sentences. The two sides then reached a tentative agreement that did not involve the issue of concurrent sentencing. The public defender, after discussing the proposed terms of the agreement with Clouse, sent a letter to the prosecution confirming the terms of that agreement. The public defender also sent a letter to Clouse the same day to make sure that the terms of the proposed agreement were acceptable to him.

On January 31, 1989, Clouse agreed to plead guilty to two counts of armed robbery in exchange for the dismissal of the other charges of kidnapping, use of a firearm while committing a felony, and felon in possession of a firearm. After outlining the terms of the plea agreement, Clouse's attorney informed the district court that "[t]here has been no agreement as pertains to sentencing." The following exchange then took place between the district court and Clouse:

"THE COURT: And I take it that you have discussed this plea agreement with your attorney thoroughly?
"MR. CLOUSE: Yes, Your Honor.
"THE COURT: And are you satisfied that you understand the plea agreement that they have entered into?
"MR. CLOUSE: Yes, Your Honor.
"THE COURT: And you understand the nature and consequences of it?
"MR. CLOUSE: Yes, Your Honor."

At sentencing, Clouse's attorney argued that the Park County sentence should run concurrently with the Campbell County sentence. He argued, alternatively, for the Park County sentences to run concurrent with each other. The district court in its written judgment sentenced Clouse to a term of 20–25 years in the state penitentiary on one count of armed robbery and, applying the habitual criminal statute, an enhanced sentence of 40–50 years on the other count of armed robbery. The district court ordered the two sentences to run consecutive to each other, and consecutive to the 60–75 year sentence Clouse was currently serving on the Campbell County charges, for a combined sentence of 120–150 years.

Clouse now challenges the sentences he received for the armed robberies he committed in Park County. Clouse maintains that his decision to plead guilty in Campbell County was based, in part, on his belief that the June 6, 1988 letter from the Park County prosecuting attorney offered the prospect of concurrent sentencing for the crimes he committed in Campbell and Park Counties. Clouse now claims he relied to his detriment on the possibility of concurrent sentences when he agreed to plead guilty. Principles of due process therefore require, Clouse asserts, that he be given the opportunity to withdraw his guilty pleas in Park County and have the terms of the letter presented to the district court in Park County at a new arraignment. He frames this as a request for specific performance.

1. The sentence Clouse received on the Campbell County charges was affirmed in *Clouse v. State,*

776 P.2d 1011 (Wyo.1989).

We granted Clouse an evidentiary hearing to determine whether there existed a plea agreement under which Clouse pleaded guilty to the Campbell County charges in exchange for the Park County prosecutor consenting to concurrent sentences on the Campbell and Park County charges. At the conclusion of the hearing, the district judge made the following findings:

"[T]hat there was not any plea agreement concerning the Park County charges, certainly no plea agreement concerning the Park County charges that he was relying upon to his detriment * * * when he entered his plea in Campbell County. Nor was there any such agreement when he entered his plea in Park County.

"The way I [district court] take the evidence * * * is that Mr. Clouse was aware of certain talks that had taken place between his [first] attorney * * * and the [Park] County Attorney * * * but it's obvious from his testimony, from the letter, he knew there was no agreement.

"He was continuing to contest the charges in Campbell County. His own testimony is that he thought there was a good chance of concurrent sentences when he pled [guilty] in Park County, and his letter of October 11th certainly indicates at that time he didn't think there was any agreement."

■ It is the district court—as the trier of fact—who must assess the credibility of witnesses and the weight to be given their testimony, in deciding whether there existed a valid plea agreement and its terms and conditions. *People v. Navarroli*, 121 Ill.2d 516, 118 Ill.Dec. 414, 416, 521 N.E.2d 891, 893 (1988). Whether a plea agreement exists dovetails with our own standard of review for questions of fact:

"We assume that evidence in favor of the successful party is true, disregarding entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. 'So long as there exists substantial evidence

supporting the trier of fact's determination, we will not second guess it on appeal.'" *Richardson v. Green*, 644 P.2d 778, 779 (Wyo.1982). *See also Anderson v. Bauer*, 681 P.2d 1316, 1319 (Wyo. 1984).

■ The determination of the existence of a valid agreement between the State and the defendant is a matter for the trial court's determination, and its finding as to the existence of the agreement should not be reversed upon appeal absent an abuse of discretion. *Steffen v. State*, 267 Ark. 402, 590 S.W.2d 302, 304 (1979).

"An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did." *Roberts v. Vilos*, 776 P.2d 216, 217 (Wyo.1989). *See also Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986).

The United States Supreme Court has noted the critical requirement for individuals mounting a constitutional challenge to their plea agreements:

"A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of the court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here." (footnotes omitted) *Mabry v. Johnson*, 467 U.S. 504, 507–508, 104 S.Ct. 2543, 2546, 81 L.Ed.2d 437 (1984).

Thus it is only when "the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause." *Mabry*, 467 U.S. at 509, 104 S.Ct. at 2547.

■ Clouse suffered no due process violation. The Park County proposal for concurrent sentencing was no longer on the table when Clouse agreed to accept the

plea agreements offered him. Simply put, Clouse knew the consequences of his guilty pleas when he made them. Assuming, as we must, that all of the evidence in favor of the State as the prevailing party is true and disregarding all the conflicting testimony of the defendant, there was sufficient testimony elicited at the evidentiary hearing to find that Clouse knew when he agreed to accept the Campbell and Park County plea agreements that neither of them offered an agreement for concurrent sentencing. One of Clouse's attorneys, when asked at the evidentiary hearing why he did not pursue the letter from the Park County prosecutor, testified that the letter "wasn't a plea bargain at all." Clouse's attorney further testified that "[t]here was never a deal made with Park County and Campbell County charges together." The decision to accept the Campbell County plea agreement, according to Clouse's attorney, was instead based on other considerations, such as the case was not "defensible."

There was also testimony from the public defender, who negotiated the Park County plea, that Clouse agreed to accept the Park County agreement even though it said nothing about concurrent sentencing. At his change of plea hearing, the district court told Clouse that if he pled guilty to those two charges, the Court could impose *consecutive* sentences. In response, Clouse indicated that he understood that *consecutive sentences* were a possibility if he pled guilty to the two charges of armed robbery. The district court also inquired whether "[o]ther than the plea bargain that the attorneys have discussed, has anyone promised you anything else if you would enter guilty pleas to those charges?" Clouse responded that there were no other promises.

In *Santobello v. State*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Court stated that the "circumstances" of what is fair and reasonably due the defendant under a plea agreement will vary,

> "but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. at 499.

There was sufficient evidence to find that Clouse knew—when he voluntarily agreed to plead guilty—that the Park County proposal had already been withdrawn. In its place was a new proposal that contained no agreement on concurrent sentencing.

We hold that there was sufficient evidence for the district court to find that Clouse pleaded guilty knowing there was no plea agreement on concurrent sentencing and that there was no due process violation. Nor did the trial court abuse its discretion in its determination of the questions presented.

▮ Lastly, we address Clouse's claim that the district court's oral pronouncement of 10–25 years on the one count of armed robbery controls over the written judgment and sentence of 20–25 years entered later on that same count. It appears that the difference between the oral pronouncement of 10–25 years and the written judgment/sentence of 20–25 years may be the result of a "clerical mistake." *See* W.R. Cr.P. 37, which provides: "Clerical mistakes in judgments * * * and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders."

We remand for the district court to correct that portion of the sentence that contains the discrepancy between the oral pronouncement and the written judgment/sentence to accurately reflect what was unambiguously pronounced at the sentencing hearing. *See McGraw v. State*, 770 P.2d 234 (Wyo.1989). The decision of the district court otherwise is

Affirmed.

THOMAS, Justice, concurring.

I would not remand the case to the district court simply to correct the written judgment and sentence to match the transcript of the sentencing hearing. I would remand to the district court to make a determination as to which document was

incorrect, the transcript or the judgment and sentence. If the court reporter's notes are not available, then I would agree that the transcript should control.

On many keyboards on computers, however, the one (1) key is located near the two (2) key and, for me, it is conceptually possible that a typographical error occurred in the preparation of the transcript. Certainly, a sentence of twenty to twenty-five years is more consistent with the heft of the tome that the trial judge cast at Clouse than a sentence of ten to twenty-five years would be. Consequently, in my view, the potential of a typographical error should be investigated in the transcript as well as in the judgment and sentence.