Thomas Quentin SWINGHOLM,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–79.

Supreme Court of Wyoming.

Jan. 29, 1996.

Sylvia Lee Hackl, State Public Defender; and Deborah Cornia, Appellate Counsel, State Public Defender Program, Cheyenne, for appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Sr. Assistant Attorney General; and Georgia L. Tibbetts, Assistant Attorney General, Cheyenne, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

Appellant Thomas Swingholm (Swingholm) appeals his sentence proceeding on the grounds that the State presented evidence in breach of a plea agreement, violating his right to due process. Finding no breach and no due process violation by the sentencing proceedings, we affirm his sentence.

## ISSUES

Only one issue is presented for our review by Swingholm and the State:

Did the sentencing proceeding violate Appellant's right to due process?

## FACTS

On June 10, 1994, Swingholm was arrested and charged with one count of taking immodest, immoral or indecent liberties with a sixteen year old female, "MD." That same day, law enforcement officials conducted a search of Swingholm's residence and seized, among other things, numerous pornographic magazines, adult toys and photographs of nudes. Further investigation led to charges of sixteen counts of indecent liberties involving five more minors, both female and male. Swingholm's wife, Kate Swingholm, was also arrested in connection with the crimes.

Before arraignment, Swingholm and the State agreed he would plead guilty to two counts of indecent liberties with the minor female, "MM," in exchange for the State's dismissing the other fourteen charges. Ad-

ditionally, the State also agreed to recommend a suspended prison sentence, that Swingholm serve a six-month split sentence in the Campbell County Detention Center followed by a term of supervised probation. As a condition of probation, Swingholm was to seek counseling from Dr. Bill Heineke of the Wyoming Regional Counseling Center. The State agreed to dismiss a juvenile court action against Swingholm and his wife regarding their infant daughter, dismiss felony charges against Swingholm's wife and recommend suspended sentences and unsupervised probation for Mrs. Swingholm on remaining misdemeanor charges.

Before accepting Swingholm's guilty pleas to the two felony counts, the district court thoroughly discussed the terms of the agreement with Swingholm:

Court: I have here a Statement of Agreement. Did you sign that Statement of Agreement, Mr. Swingholm?

Defendant: Yes.

Court: Okay. Okay. Now I want you to tell me what the agreement is. I don't want you to read it to me. I just want you to tell me what you understand it to be.

Now, I want to explain something to you before you start. The purpose of my asking—it's not a quiz—the purpose that I'm asking is that I want to make sure you understand what it is that you're entering into here, and the best way for me to insure that you know is not for you to merely agree with me if I read it, regurgitate it for you, but require you to tell me what it is. So I want you to do that now.

Defendant: I believe that it's an agreement that I would plead guilty to two counts of indecent liberties, 14 counts would be dismissed, and that the State would recommend sentencing to be split sentence of six months in the county jail.

Court: Okay. What about—there's a reference here to Dr. Heineke. Tell me about that.

Defendant: Yes, I would go to counseling with Dr. Heineke. Also, that there would be a term of probation. And also that

there's an agreement made—or to be offered to my wife.

\*       \*       \*       \*       \*       \*

Court: I see here a reference to a juvenile case. Tell me what you understand the agreement to be with reference to that juvenile case.

Defendant: That our daughter [S] would— or that the juvenile case would be dismissed also upon my plea.

\*       \*       \*       \*       \*       \*

Court: Okay. Now, there's sometimes some confusion about these recommended agreements, and I want to make sure that you understand what the agreements are. First of all, if you plead guilty to two counts of taking immodest, immoral or indecent liberties, what's the worst thing that could happen to you?

Defendant: The worst thing that could happen is I could be sentenced up to 20 years in prison.

Court: And $2,000 fine.

Defendant: And $2,000 fine.

Court: The minimum that could happen to you would be a $200 fine.

Defendant: Yes.

Court: Now, I want to make sure you understand that what you have bargained for here is a recommendation and not a result. The State has agreed to recommend split sentence followed by probation, and if the State follows through on that recommendation—follows through and makes that recommendation, then you have got—then you've received what you've bargained for.

However, the—the decision about what sentence actually is imposed is up to the judge and not to the prosecutor, and the judge can follow the recommendation or can ignore the recommendation if the judge chooses to ignore the recommendation. Then you could be sentenced up to a maximum of two (sic) years in the penitentiary.

Do you understand that?

Defendant: Yes.

Court: Okay. If the judge doesn't go along with that agreement, you don't get to

change your mind, you don't get to come back into court and withdraw your plea. If you enter your plea today, then it's done, and whatever sentence is imposed, even if it exceeds the plea agreement, is what you have to live with. Do you understand that?

Defendant: Yes.

Court: You understand that you still would have to make restitution?

Defendant: Yes.

Swingholm provided a factual basis for his guilty pleas when he admitted that on two separate occasions in October 1993, he had sexual intercourse with "MM," aged sixteen years, at his home in Campbell County. Swingholm was 30 years old. The court inquired whether Swingholm had any sexual contact with the other juveniles named in the dismissed charges and then advised Swingholm that he had the right to refuse to answer, but could be prosecuted for perjury if he lied in his answers.

Court: Okay. My purpose in asking these questions is not to—is not to further expose you to liability, but to determine when it comes time for sentencing the extent of this kind of aberrant behavior. If you don't tell me, you're still going to have to tell Dr. Heineke or whoever else does the evaluation, so we may as well get it out to begin with.

\*   \*   \*   \*   \*   \*

Now, let me remind you of something. You can consult with your attorney if you want to. You can refuse to answer my questions if you want to, but if you lie to me, you can be prosecuted for perjury.

Except for one incident, Swingholm then denied any charged sexual contact with the other minor children. The court accepted Swingholm's pleas and ordered that a presentence investigation be conducted by the Department of Probation and Parole and an assessment of Swingholm be done by Dr. Heineke. The court also stated it would consider any aggravating factors that the State wished to present at the sentencing hearing.

After reviewing the presentence investigation report and Dr. Heineke's assessment of Swingholm, the district court wrote and informed the attorneys for both sides that these reports contained numerous allegations of prior sexual improprieties by Swingholm with children. The court stated that if the allegations were true, then the court would probably not abide the sentencing recommendation of the plea agreement. Based upon Swingholm's specific denials to some of these allegations, the district court advised the parties that Wyo.R. of Crim.P. 32(a)(3)(C) required that it make a factual determination with respect to controverted allegations. It expected the State to present testimony at the sentencing hearing, and if the State were unable or unwilling to support the "insinuations" contained in the sentencing papers, then the report's allegations would not form any part of the sentencing decision. The court stated further that:

> In other words, the allegations of Mr. Swingholm's prior deviant behavior should either be supportable or they should not be made. Hearsay testimony is not necessarily excluded, but sentencing information must be reliable. I do not consider second and third hand accounts of disputed events to meet the reliability test, particularly when so much is at stake.

The sentence hearing was rescheduled. The State notified Swingholm that it intended to comply with the court's directive that it support the allegations made in the presentence report. Swingholm moved to compel the State to abide by the terms of the plea agreement, arguing that the agreement prohibited the State from presenting aggravating evidence at the sentencing hearing. In response, the State moved for denial of that motion and argued that it intended to honor the sentencing recommendation but would also comply with the court's letter.

The district court heard arguments and reiterated its concerns expressed in its letter regarding the veracity of the allegations contained in the reports. Concluding that the evidence was relevant for purposes of sentencing, the court reminded Swingholm that it was not bound by the State's sentence recommendation and plainly stated that it would not impose such a sentence if the facts were as alleged in the reports. The court

also noted that it had an ethical duty to inquire into Swingholm's character and behaviors and to fashion an appropriate sentence based upon verifiable facts, not innuendos, accusations, insinuations or hearsay. In fairness to Swingholm, however, the court offered him the opportunity to withdraw his guilty pleas. Swingholm refused. The district court determined that the State intended to abide by the plea agreement and denied Swingholm's motion.

At the sentence hearing, several children testified about numerous episodes of sexual contact with Swingholm. Many of these episodes included Swingholm's wife and other men or children. The victim, "MM," read an impact statement and Dr. Heineke and the investigating officer also testified. Swingholm presented witnesses and made a statement to the court denying all the allegations except those involving "MM." The State did not recommend a sentence different from that contained in the agreement. Swingholm urged the court to sentence him pursuant to the plea recommendation. The court stated:

Court: I'll address again the argument with respect to the plea agreement.

When I accepted Mr. Swingholm's plea I advised him that what he had bargained for was a recommendation and not a result; that I would consider the State's recommendation but would independently reach a decision as to sentencing in this case. That's never changed.

When we had the prior hearing, Mr. Murray, and you raised this same question, I asked at that time if Mr. Swingholm wanted to withdraw his plea and go to trial on these—all of these charges and was advised after you consulted with him that he did not. That was well after he knew that the State was going to be putting on evidence and that I was going to be considering matters in aggravation of sentence as well as matters in extenuation and mitigation.

What I now hear argued is that the recommendation which I would have some discretion to accept or reject has now suddenly become mandatory, and I'm obliged to impose the sentence that was recommended by the State. And I decline to do that.

The district court then stated what it was considering in imposing sentence:

Mr. Swingholm, I've now listened to a day's evidence from a number of juveniles who have all testified in graphic detail about their sexual adventures with you and your wife. I've not heard anything that reasonably impugns those juveniles, nor have I heard anything which in any substantial way detracts from their credibility. I found the testimony to be believable, and in spite of your denials, it is my conclusion that these things happened.

What I see here is a couple who are sexually adventurous, and among consenting adults, there is nothing wrong with that in our society. It's acceptable. However, when you start bringing juveniles into that process, you have stepped well beyond the bounds of propriety and well beyond what's permissible under the law.

It seems to me that what you have done is engaged in the systematic exploitation of juveniles. Some of them may have been willing. Some of them may have while not been willing, not very assertive in spurning your sexual advances. Neither of those facts make any difference. You are an adult. They are children. Irrespective of their wishes, you are required under the law to act reasonably, appropriately, or with restraint.

It appears that you have engaged in inappropriate sexual contacts with juveniles, that you have subjected—that you have engaged in intercourse with juveniles, you have encouraged juveniles to participate in group sex with you and your wife and perhaps with others. Those things are perverse, illegal, and immoral.

The district court then sentenced Swingholm to consecutive terms of imprisonment of not less than three nor more than ten years. This appeal followed.

## DISCUSSION

Swingholm contends that the sentencing hearing violated his right to due process, requiring a remand for a new and proper

procedure. Specifically, Swingholm asserts due process was violated when he was promised by the initial prosecutor that she would not call witnesses at sentencing and this agreement was breached by a different prosecutor who called ten witnesses to testify at sentencing; when the court turned the sentencing proceeding into a trial; and when the court denied his request that a new presentence investigation report be prepared. We first examine whether the plea agreement was breached.

*Breach of Plea Agreement*

■ Swingholm asserts that the United States Supreme Court has held that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *Clouse v. State*, 809 P.2d 791, 795 (Wyo.1991). In *Cardenas v. Meacham*, 545 P.2d 632 (Wyo.1976), this court agreed that the rationale for the *Santobello* decision was that

> it would be unfair to accept a guilty plea where part of the bargain, upon which the plea was based, was breached. The defendant had not agreed to plead guilty to charges under terms other than those set forth in the agreement. Santobello was thus permitted to plead anew. This reasoning also should apply where a defendant reasonably believes that certain terms of an agreement exist when in fact they do not. His plea cannot be voluntarily entered within the meaning of Rule 11 or [WYO.R.CRIM.PROC.] Rule 15 until he is aware of the exact terms of the agreement and agrees to plead guilty under those terms.

*Cardenas*, 545 P.2d at 638. Only when a defendant is not fairly apprised of the consequences of a plea agreement can his plea be challenged under the Due Process Clause. *Clouse*, 809 P.2d at 794 (citing *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984)).

■ Whether the plea agreement contained a term requiring the State to stand silent was a matter for the district court to determine before it accepted Swingholm's guilty pleas at arraignment and when it heard arguments on Swingholm's motion to compel the State to abide by the plea agreement. *Clouse*, 809 P.2d at 794. Before accepting Swingholm's guilty pleas, the district court determined the terms and conditions of the plea agreement. No mention was made that it was a term of the agreement that the State would stand silent at the sentencing hearing and Swingholm articulated his understanding that the court could impose a greater sentence than the one recommended by the State. Following Swingholm's motion to compel the State to abide by the plea agreement, the district court again determined this term was not a part of the agreement. It is the district court—as the trier of fact—who must assess the credibility of witnesses and the weight to be given their testimony, in deciding whether there existed a valid plea agreement and its terms and conditions. *Clouse*, 809 P.2d at 794. The court's finding will not be reversed upon appeal absent an abuse of discretion. *Id.* As set out in our discussion of the facts, the State agreed to recommend a sentence and nothing more. There was no due process violation.

*Sentencing Proceedings*

Swingholm asserts that the district court's reliance on the presentence report, and the district court's conduct as well as the State's conduct at the sentencing proceedings, violated due process. Our standard of review for such an assertion was set out in *Mehring v. State*, 860 P.2d 1101, 1115 (Wyo.1993):

> We have said that filed presentence reports and information are evidence for the exercise of sentencing discretion, subject only to the rights of the convicted individual to deny, dispute or disprove.... [S]entencing will not be disturbed as violation of due process because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.... [T]he defendant

had the burden to "establish that the sentencing judge in fact rested the sentence on false or improper premises."

*Mehring,* 860 P.2d at 1115 (quoting *Smallwood v. State,* 771 P.2d 798, 802 (Wyo.1989) (citations omitted)).

In *Jackson v. State,* 902 P.2d 1292 (Wyo. 1995), the appellant contended he was entitled to withdraw his guilty plea because the State had breached its plea agreement to stand silent at sentencing by telling the sentencing court of an incident involving the appellant which had occurred during release before sentencing. *Jackson,* 902 P.2d at 1293. This court said:

> the fact that [Wyo.R.Crim.P.] Rule 11 allows the State to bargain away its opportunity to argue for a particular sentence does not include avoiding responsibility to provide complete information about the person to be sentenced.... Efforts by the State to provide relevant factual information are not tantamount to taking a position on the sentence and will not violate a plea agreement. A prosecutor has a duty to ensure that the sentencing court has complete and accurate information concerning the defendant, thereby enabling the court to impose an appropriate sentence. Thus, if the State is aware that the court lacks certain relevant information, the prosecutor has the duty, as an officer of the court, to bring that information to the attention of the court. In this case, the State promised to "stand silent" at the time of sentencing. That promise, however, did not require the prosecutor to withhold from the district court pertinent information on appellant's background and character.

*Jackson,* 902 P.2d at 1294 (citations omitted).

In this case, the State agreed to recommend a particular sentence. That agreement was kept. *Jackson* requires the State to fulfill its duty to a sentencing court. Swingholm's remedy for any perceived plea agreement breach or due process violation would be withdrawal of his guilty plea. The record is clear that the court offered to permit Swingholm to withdraw his guilty plea. He declined. There was no due process

violation by the State's conduct at the hearing.

Further, Swingholm has not demonstrated that the district court improperly relied upon the presentence report or that it conducted an improper sentencing proceeding.

> [I]n imposing sentence, the trial court is given broad discretion to consider a wide variety of factors about the defendant and his crimes.
>
> \*    \*    \*    \*    \*    \*
>
> In evaluating character, the trial court, in exercising its discretion, may consider a broad range of reports and information.... In imposing sentence, the trial court is permitted to go beyond the record to consider the defendant's past conduct and activities including evidence of crimes for which charges were filed but no conviction resulted. The scope of inquiry may include the factual basis of dismissed charges "as well as hearsay reports implicating the defendant in other crimes if such reports are deemed sufficiently reliable."

*Mehring,* 860 P.2d at 1115–17.

■ In sentencing, due process provides a right to be sentenced only on accurate information. *Mehring,* 860 P.2d at 1117. The district court recognized the discrepancy between the contents of the presentence report and what Swingholm swore to at arraignment and, following testimony, resolved those inconsistencies against Swingholm. Due process was not violated by the sentencing proceedings.

Finding no constitutional error, Swingholm's sentence is affirmed.